**\*NOR FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

TONY ANNECHARICO, individually :
and as a class representative  :
on behalf of others similarly  :   Civ. Action No.: 16-1652(FLW)
situated,                      :
                              :
          Plaintiff,           :        **OPINION**
                              :
                    v.         :
                              :
RAYMOUR & FLANIGAN and JOHN    :
DOE INDIVIDUALS and BUSINESSES :
1-20,                          :
                              :
          Defendants.          :
_____:

**WOLFSON, District Judge**:

Plaintiff Tony Annecharico ("Plaintiff") purchased a mattress and a tandem protection plan from defendant Raymour & Flanigan ("R&F" or "Defendant"), a furniture retailer, approximately five years prior to filing this suit. Because of an unspecified defect in the mattress, Plaintiff sought to use the protection plan for repairs. According to Plaintiff, R&F never rectified the issue as promised under the plan. As a result, Plaintiff brings this putative consumer class action, alleging that Defendant's conduct not only breached its express warranty, but it also violated the New Jersey Consumer Fraud Act ("NJCFA"), and moreover, Plaintiff avers that the purchase contract he received violates the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act

1

("TCCWNA"). In the instant matter, Defendant moves to dismiss Plaintiff's individual claims for failure to state a claim. Based on the reasons set forth herein, Defendant's motion is **GRANTED**. However, while Counts One and Two are dismissed, Plaintiff has leave to amend the Complaint, within 30 days from the date of the Order accompanying this Opinion, as to Count Three, NJCFA claim, and Count Four, breach of warranty/contract claim.

### BACKGROUND and PROCEDURAL HISTORY

The following facts are taken from the Complaint and assumed as true for the purposes of this motion. In December 2010, Plaintiff purchased a new mattress from R&F at its store located in Camden County, New Jersey. Compl., ¶¶ 13-14. In addition to purchasing the mattress, Plaintiff alleges that he also brought a Platinum Protection Plan (the "Protection Plan"), based on representations from a R&F salesman who claimed that the Plan "was the best on the market . . . [because] it covered anything from stains and tears to sags and/or deformities for a period of 10 year with 'no questions asked by R&F.'" *Id.* at ¶¶ 17-18. According to Plaintiff, he never received a document titled "warranty" or "service contract" setting forth any terms and condition; Plaintiff alleges that, instead, he was given the invoice of the purchase and a brochure "discussing a 'Platinum Protection Plan' and a 'Platinum Mattress Protection Plan'." *Id.* at ¶¶ 19, 21.

In September 2015, Plaintiff avers that he started to experience unspecified problems with his mattress. Consequently, pursuant to the Protection Plan, Plaintiff contacted R&F to schedule a repair. *Id.* It is unclear from the Complaint whether a representative from R&F met with Plaintiff, but Plaintiff alleges that R&F's customer service "explained to [Plaintiff] that, while R&F would normally replace the mattress, because [Plaintiff] removed the mattress' 'Do Not Remove' label, that action voided the service contract." *Id.* at ¶ 23. Plaintiff further alleges that, at the time of purchase, "the aforesaid possibility or condition was never explained or even mention[ed] to [Plaintiff]," *id.* at ¶ 24, and the brochure and invoice that Plaintiff received did not indicate such a contractual limitation. *Id.* at ¶ 25. To date, Plaintiff complains that R&F "never offered to replace the mattress or to provide [Plaintiff] with a refund of the price . . . ." *Id.* at ¶ 26.

Based on these allegations, Plaintiff filed a Complaint against Defendant, asserting the following claims: 1) violations of the TCCWNA; 2) a declaratory judgment pursuant to the TCCWNA; 3) violation of the NJCFA; and 4) breach of contract/warranty. In the instant matter, Defendant moves to dismiss the Complaint in its entirety for failure to state a claim.

3

**DISCUSSION**

## I.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550

4

U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (citation and quotations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

5

## II.   TCCWNA

As a preliminary matter, throughout Plaintiff's papers, he argues the merits of his class claims.   However, since the purported class has not been certified, on this motion, the Court must only assess the sufficiency of Plaintiff's individual claims to determine whether those are properly pled.   *See Bass v. Butler*, 116 Fed. Appx. 376, 385 (3d Cir. 2004).   I turn, first, to Plaintiff's TCCWNA-related claims.

Section 15 of TCCWNA provides, in pertinent part, that "[n]o seller" shall "display any written . . . notice or sign" which "includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made" or the "notice or sign is given or displayed."   N.J.S.A. 56:12-15.   This provision "establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer." *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007), *aff'd on other grounds*, 197 N.J. 543 (2009).   Importantly, TCCWNA does not establish any independent legal rights or responsibilities.   *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 134 (3d Cir. 2014).   Instead, the state statute only bolsters other legal rights proscribed by other laws.   *Id.*

To state a claim under Section 15 of the TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer;

(2) the defendant is a seller, lessor, creditor, lender or bailee; (3) the defendant offers the plaintiff a contract or gives or displays any written notice or sign; and (4) the contract, notice, or sign includes a provision that violates any legal right of a consumer or responsibility of the seller, lessor, creditor, lender or bailee. *Id.* at 135 (quoting *Bosland*, 396 N.J. Super. at 278).

Here, Defendant takes issue with Plaintiff's allegations with respect to the last element.  Plaintiff's TCCWNA claims focus on the invoice that Plaintiff received at the time he purchased the mattress from R&F.  On the back side of the invoice the following language appears:

> ALL SALES ARE FINAL:  Once this agreement is executed, you cannot cancel this sales agreement.  No refund, exchange or modification of this agreement shall be made.  A due bill will be issued.  *No additional conditions or terms will be binding on Raymour & Flanigan unless they are in writing and written on the face of this agreement.* ("Sales Final Clause")

Invoice, dated December 14, 2010, p. 2 (emphasis added). Correspondingly, the front of the invoice contains the following language:

> If the merchandise ordered by you is not delivered by the promised delivery date, Raymour & Flanigan must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date. ("Delivery Clause")

*Id.* at p. 1.  That clause is preceded by the promised delivery date and other purchase information.

7

Plaintiff argues that the Sales Final Clause violates New Jersey's Household Furniture and Furnishings Regulations, N.J.A.C. 13:45A-5.1, *et. seq.* (the "HFR"). Importantly, the actual title of the regulation is "Delivery of Household Furniture and Furnishings," and governs only delivery of household furniture.

In relevant parts, the HFR states:

> The contract forms or sales documents shall conspicuously disclose the seller's obligations in the case of delayed delivery in compliance with N.J.A.C. 13:45A-5.1 and shall contain, on the first page of the contract form or sales document, the following notice in ten-point bold face type:
>
> **If the merchandise ordered by you is not delivered by the promised delivery date, (insert name of seller) must offer you the choice of (1) canceling your order with a prompt, full refund of any payments you have made, or (2) accepting delivery at a specific later date.**

N.J.A.C. 13:45A-5.3(a) (emphasis in original). Moreover,

> It shall be unlawful for any person to use any contract or sales agreement that contains any terms, such as "all sales final," "no cancellations" or "no refunds," which violate or are contrary to the rights and responsibilities provided for by this rule. Any contract or sales agreement which contains such a provision shall be null and void and unenforceable.

Id. at 13:45A-5.3(c).

There is no dispute, here, that the front side of the invoice contains the statutory-required language under Subsection (a) of the HFR. Indeed, the Delivery Clause is a verbatim recitation of the HFR. *See* Invoice, p.1. Rather, Plaintiff argues that because the invoice also includes prohibited language under Subsection

(c), the invoice violates Plaintiff's established rights under the HFR.  In that regard, Plaintiff posits that the Sales Final Clause of the invoice on the back side "is diametrically opposed" to the language on the front which allows cancellations and refunds when furniture is untimely delivered.  Pl. Br. at p. 13.  I disagree with Plaintiff's interpretation of the relevant law and his strained reading of the invoice.  But, before I turn to the merits of Plaintiff's arguments, I first note that his opposition on this issue confusingly interjects legal issues involving TCCWNA claims in the context of the NJCFA.  As pled, Plaintiff's TCCWNA causes of action center on the language of the invoice and how the invoice violates TCCWNA vis-à-vis the HFR.  *See* Compl., ¶¶ 28-64.  Although Plaintiff explains that violations of the HFR are in turn *per se* NJCFA violations, as I read Plaintiff's Complaint, the entirety of Plaintiff's individual TCCWNA claims are premised on the HFR.[1]  In addition, Plaintiff's opposition offers very little substance in response to Defendant's arguments that, as a matter of law, Plaintiff has not stated a claim under TCCWNA.

---

[1]    While Plaintiff cites case law that stands for the general legal proposition that "a consumer contract that violates a clearly established legal right under the [NJCFA] regulations is also a violation of the TCCWNA," *see Bosland,* 396 N.J. Super. at 279, that proposition has little relevance in the context of Plaintiff's TCCWNA claims premised on violations of the HFR.  Indeed, Defendant does not dispute that rights set forth in the HFR, *e.g.*, Subsection (c) of the HFR, can adequately constitute a clearly established consumer right under TCCWNA.

9

I start with the interpretation of the invoice at issue.  In New Jersey, contract provisions are to be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." *Borough of Princeton, Bd. of Chosen Freeholders of Mercer*, 333 N.J. Super 310, 325 (App. Div. 2000), *aff'd*, 169 N.J. 135 (2001).  "Literalism must give away to context." *Id.* at 325. Thus, "in weighing competing interpretations, the one to be adopted is that most in accord with justice and common sense and the probable intent of the parties." *Grelu Consulting, Inc. v. Patel*, No. A-3042-11T3, 2013 N.J. Super. Unpub. LEXIS 1362, at *8 (N.J. App. Div. 2013)(citing *Krosnowski v. Krosnowski*, 22 N.J. 376, 387 (1956).  Moreover, all provisions of a contract should be given effect and "while a contract's provisions must be interpreted with reference to the whole[,] the specific controls the general." *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973)(citing  Restatement, Contracts §§ 235(c), 236(b) and (c) (1932); Williston on Contracts, Third Edition §§ 618, 619(1961)).

Here, the invoice is a two-sided document; as such, it must be read as a whole.  See *Int'l Ass'n of Machinists & Aero. Workers v. US Airways, Inc.*, 358 F.3d 255, 266 (3d Cir. 2004) (it is an "elementary canon that a contract must be read as a whole, and that individual provisions must be read in their context and not in a vacuum . . . .").  To reiterate, on the front of the invoice,

the Delivery Clause contains the identical language required by the HFR regarding options a consumer may elect in the event delivery of the furniture is untimely.  The invoice's back side contains a number of general Terms and Conditions of Sale, among which are the terms set forth in the Sales Final Clause – i.e, that once the invoice has been signed, the customer cannot cancel the agreement or receive a refund or exchange.  But, the Sales Final Clause includes the following significant condition: "No additional conditions or terms will be binding on Raymour & Flanigan *unless* they are in writing and written on the face of this agreement."  Invoice, p.2 (emphasis added).  Clearly, that provision exempts other conditions set forth elsewhere in the invoice, which would be excluded from the terms proscribed by the Sales Final Clause; and, one such exemption is the Delivery Clause. That clause expressly states that if merchandise is not timely delivered, R&F must offer a cancelation and refund, or another delivery date.

Thus, contrary to Plaintiff's contention, these two clauses are not "diametrically opposed" but rather, they can be read in harmony with each other. *See, e.g.*, *Manahawkin v. Convalescent v. O'Neill*, 217 N.J. 99, 118-19 (2014) (finding appropriate the dismissal of NJCFA and TCCWNA claims that were premised upon the theory that a particular section of an agreement violated the

Nursing Home Act, because when that agreement is read in its entirety, it did not contravene the Act).

Plaintiff has cited no authority that has held that the HFR contains strict prohibition on "all sales final" language in home furniture delivery contracts and invoices.  Rather, the plain language of the HFR, under Subsection (c), only prohibits that type of language when its use would violate or contradict other protections that the regulations provide — specifically, here, the ability to cancel in the event of a late delivery of merchandise. I find that because the Sales Final Clause discloses that there are circumstances where a customer may cancel or seek a refund, i.e., when furniture is untimely delivered, the invoice is complaint with the HFR, despite including general language that "all sales are final."[2]  Accordingly, Count One of Plaintiff's Complaint is dismissed.

Correspondingly, Count Two must also be dismissed.  In that Count, Plaintiff asserts a claim under the Uniform Declaratory Judgments Law, N.J.S.A 2A:16-50, *et seq.*, seeking a declaration that the sales invoice he received in connection with his December 2010 purchase of his mattress is void and unenforceable because the invoice failed to comply with the HFR, and thus violated

---

[2]    Defendant alternatively argues that Plaintiff's TCCWNA claims should be dismissed because he has not alleged that he is an aggrieved customer under TCCWNA.  Since I have found that Plaintiff fails to state a TCCWNA claim, I need not resolve this issue.

TCCWNA.  Since Plaintiff has failed to plead sufficiently the facts and legal basis upon which his TCCWNA claim are based, Count Two is also dismissed for failure to state a claim for the same reasons.

## III. NJCFA

In Count Three of the Complaint, Plaintiff alleges that Defendant violated the NJCFA by misrepresenting the essential terms of the Protection Plan, and omitting certain information relevant to the Plan.  Those alleged fraudulent acts, according to Plaintiff, induced him to purchase the Protection Plan.  In response, Defendant argues that Plaintiff failed to sufficiently allege all of the required elements under the NJCFA.

The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -181, "provides relief to consumers from 'fraudulent practices in the market place.'" *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010) (quoting *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 11 (2004)). To establish a cause of action under the New Jersey Consumer Fraud Act, a consumer must plead "(1) an unlawful practice, (2) an ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011); *Lee*, 203 N.J. at 521.

"It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos.*, Inc., 865 F. Supp.

2d 529, 538 (D.N.J. 2011) (citing *Frederico v. Home Depot*, 507
F.3d 188, 200 (3d Cir. 2007); *Arcand v. Brother Intern. Corp.*, 673
F. Supp. 2d 282 (D.N.J. 2009)). Rule 9(b) requires that "[i]n
alleging fraud or mistake, a party must state with particularity
the circumstances constituting fraud or mistake." Fed. R. Civ. P.
9(b). That is, "the plaintiff must plead or allege the date, time
and place of the alleged fraud or otherwise inject precision or
some measure of substantiation into a fraud allegation." *Frederico
v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). However, courts
should "apply the rule with some flexibility and should not require
plaintiffs to plead issues that may have been concealed by the
defendants." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 307
(D.N.J. 2013) (internal quotation omitted). In the context of a
class action, "the individual named plaintiffs' claims should each
satisfy Rule 9(b) independently." *In re Prudential Ins. Co. of Am.
Sales Practices Litig.*, 975 F. Supp. 584, 597 (D.N.J. 1996).

### A.   Unlawful Conduct

I note at the outset that Plaintiff's Complaint is not a model
of clarity; while Plaintiff spent numerous paragraphs setting
forth his NJCFA allegations, it is difficult to decipher upon what
types of unlawful conduct Plaintiff bases his NJCFA claim.   It
appears that Plaintiff's theory of liability under the NJCFA is
premised on three separate acts: 1) Defendant violated the NJCFA
*per se* because its form sales invoice violated the HFR; 2)

14

Defendant's sales agent made misrepresentations to Plaintiff about the scope of the coverage of the Protection Plan; and 3) Defendant omitted information regarding the removal of certain tags on Plaintiff's mattress.

For the purposes of the NJCFA, New Jersey courts recognize three types of unlawful conduct: affirmative misrepresentations; omissions of material facts and violations of certain regulations promulgated under the statute. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009), aff'd, 374 Fed. Appx. 341 (3d Cir. 2010). The common thread that pervades all types of unlawful conduct under the NJCFA is "[its] capacity to mislead." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994) (citing *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977)). Apart from this common characteristic, however, there are several differences between misrepresentations and omissions. *See Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001) ("This statutory scheme distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act"). For one, misrepresentations do not require a showing of intent or even actual deceit or fraud. *Cox*, 138 N.J. at 17-18; *Leon*, 340 N.J. Super. at 468; *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997) ("One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive."). Moreover, the

misrepresentation need not be one of material fact. *Arcand*, 673 F. Supp. 2d at 297. In contrast, omissions consist of (1) knowingly concealed (2) material facts (3) concealed with the intention that the consumer rely upon the concealment. *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426 (App. Div. 2003) (citing *Feinberg v. Red Bank Volvo, Inc.*, 331 N.J. Super. 506, 511 (App. Div. 2000)).

Plaintiff's first theory of unlawful conduct fails because I have already found that as a matter of law, Plaintiff cannot sustain his TCCWNA claim based on violations of the HFR.  For the same reasons, Plaintiff's NJCFA claim based on the same conduct cannot state a claim.  Next, Plaintiff alleges that the sales agent at the R&F store at the time Plaintiff purchased the mattress fraudulently induced him to buy the Protection Plan by stating that the Plan "was best on the market, [and by] claiming [that] it covered everything from stains and tears to sags and/or deformities for a period of 10 years with 'no questions asked' by R&F." Compl., ¶ 17.  Plaintiff further alleges that when he contacted Defendant with an unspecified issue with his mattress, Defendant failed to honor the terms of the Protection Plan.  However, what Plaintiff fails to allege with respect to the agent's representation is the falsity of the agent's statement.  The fundamental deficiency of this alleged unlawful conduct is that Plaintiff does not identify the defect with respect to his mattress — whether there was a sag,

16

stain, tear or any types of deformity.  This missing allegation is important because it would demonstrate the falsity of the agent's claims. For example, it would be a false claim should Defendant fail to honor the Plan if Plaintiff's mattress had a tear.  But, based on Plaintiff's own averments, Defendant's customer service informed Plaintiff that "while R&F would normally replace the mattress, because [Plaintiff] removed the mattress' 'Do Not Remove' label, that action voided" the Protection Plan. *Id.* at ¶ 25.  It was based on that particular reason that Defendant refused to perform under the Plan, not because the Plan did not cover the "problems" that Plaintiff was experiencing with his mattress.

Lastly, Plaintiff alleges that neither the agent nor the brochure regarding the Protection Plan explained to him that the "removal of the mattresses' 'Do Not Remove' label would void the Plan.  However, as I set forth above, to adequately plead an omission under the NJCFA, Plaintiff must allege that Defendant: (1) knowingly concealed; (2) material facts; and (3) Defendant concealed material facts with the intention that the consumer rely upon the concealment.  The only allegation Plaintiff has identified to support the alleged unlawful conduct of omission is that Defendant failed to inform Plaintiff the consequences of removing the "Do Not Remove" tag.  Other than that, Plaintiff has not alleged any of the remaining elements to sufficiently allege an

17

unlawful omission.   Accordingly, Plaintiff has failed to allege properly any unlawful conduct under his NJCFA claim.

### B.   Ascertainable Loss and Causation

"The ascertainable loss and causation elements of a [NJCFA] claim are set forth in N.J.S.A. 56:8-19, which authorizes a statutory remedy for '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.'" *D'Agostino v. Maldonado*, 216 N.J. 168, 184-85 (2013). "[T]he plain language of the Act unmistakably makes . . . ascertainable loss a prerequisite for a private cause of action. An ascertainable loss under the NJCFA is one that is 'quantifiable or measurable,' not 'hypothetical or illusory.'" *Id.* at 185 (internal quotation marks and citations omitted); *see also Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009) (defining term "ascertainable loss" to "mean[] that plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical.") (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005)).

The New Jersey Supreme Court has "not always equated an ascertainable loss with one that is demonstrated by an immediate, out-of-pocket expense suffered by the consumer." *Bosland*, 197 N.J. at 558-59 (citing *Thiedemann*, 183 N.J. at 248).   In other words, "a plaintiff is not required to show monetary loss, but only that

18

he purchased something and received less than what was promised." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (internal quotation marks and citations omitted). "There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *22 (D.N.J. Mar. 26, 2012).

> In cases involving product misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle . . . . The "out-of-pocket" theory may include the purchase price of a misrepresented product if the purchasers did not receive a refund and the seller's misrepresentations rendered the product essentially worthless. A "loss-in-value" theory is based on the quantifiable difference in value between the merchandise as [advertised] and the merchandise as delivered. Under the third theory, an ascertainable loss can include a nominal overcharge for which the plaintiffs have not made a pre-suit demand for a refund.

*Id.* at *22-23 (internal quotation marks and citations omitted); *see Mann v. TD Bank, N.A.*, No. 09-1062, 2010 U.S. Dist. LEXIS 112085, *17-18 (D.N.J. Oct. 20, 2010).

Here, much of Plaintiff's allegations regarding ascertainable loss seem to center on the out-of-pocket theory.[3]  To sufficiently plead an out-of-pocket expense, Plaintiff must allege one of the following two circumstances: one, that he spent money, or in the future, needs to spend money, addressing the alleged NJCFA

---

[3]    As addressed, *infra*, Plaintiff has failed to properly allege a TCCWNA violation arising from the "all sales are final" language used in the invoice; as such, Plaintiff cannot base his ascertainable loss on that now-dismissed violation.

violations, i.e., repair costs.  Second, the mattress and/or the Protection Plan that Plaintiff had purchased are essentially worthless.  *See Mladenov*, 124 F. Supp. 3d at 375.  Plaintiff has not sufficiently alleged either type of loss.  First, there is no allegation that Plaintiff paid any money to resolve the unspecified problems with his mattress, such as incurring repair costs.  Nor has Plaintiff alleged that he will incur such costs in the future. Simply alleging that Plaintiff was experiencing issues with his mattress is not sufficient; that loss must be cognizable and calculable.  As pled currently, it is purely speculative as to Plaintiff's loss in this specific context.

Next, Plaintiff argues that the respective purchase price of the mattress and the Protection Plan constitutes loss because he paid for two products that are essentially "worthless."  However, Plaintiff's argument aside, he has not sufficiently alleged that either the mattress or the Protection Plan is totally worthless. As to the mattress, Plaintiff does not identify the problems that he was experiencing with his five-year old mattress, and therefore, it is difficult to discern whether the mattress was in fact worthless at the time the Complaint was filed.  More importantly, Plaintiff does not explicitly allege that his mattress is unusable. Indeed, Plaintiff alleges that he had used his mattress for at least five years without experiencing any issues.  Next, while Plaintiff alleges that he failed to derive any value from the

Protection Plan because Defendant refused to provide coverage to repair or replace his mattress, Plaintiff fails to identify the defect of the mattress.  This is critical, because to determine whether Plaintiff has a cognizable loss, he must explain that the alleged defect of the mattress was indeed covered under the Protection Plan.  In addition, Plaintiff has not alleged that the Plan itself would have provided no coverage at all — under any circumstances.  Without any of these types of allegations, Plaintiff has failed to properly allege that the mattress or the Protection Plan is totally worthless.[4]

Plaintiff alternatively argues that even if "the price paid for the service contract and the cost of repairs . . . fails to support ascertainable loss," the NJCFA, N.J.S.A. 56:8-2.11, nonetheless entitles him to a statutory refund as part of his private suit.  That argument was rejected by the Supreme Court of New Jersey in *Weinberg v. Sprint Corp.*, 173 N.J. 233, 249-50 (2002).  The Court held that the NJCFA permits consumers to recover

---

[4]    Plaintiff relies on *Lee v. Carter-Reed Co.*, 203 N.J. 496 (2010) and *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009), for the remarkable proposition that the mere purchase price of a product or service can constitute ascertainable loss, without alleging actual loss.  Neither case expressed such a view.  In *Lee*, the Supreme Court explicitly defined the types of loss necessary to support an out-of-pocket expense and the replacement cost of a defective product.  *Lee*, 203 N.J. at 522.  Similarly, in *Bosland*, the Court discussed generally the definition of ascertainable loss under the NJCFA, and the level of certainty necessary for a plaintiff to have sustained such a loss.  *Bosland*, 197 N.J. at 558-59.

21

"refunds for losses caused by violations of the Act," but "only for victims of consumer fraud who have suffered an ascertainable loss." *Id.* The Court explained:

> The express language of the statute requires a private party to have a claim that he or she has suffered an ascertainable loss of money or property in order to bring a cause of action under the Act. In effect, the Act permits only the Attorney General to bring actions for purely injunctive relief. This Court has considered the statutory language and has held that, in contrast to the Attorney General, a private plaintiff must have an ascertainable loss in order to bring an action under the Act.

*Id.* at 250. Hence, Plaintiff may not rely on the demand of a refund to meet his ascertainable loss pleading obligation.

Finally, Defendant argues that Plaintiff has not established the third prong of a NJCFA claim — i.e. a causal relationship between the alleged unlawful conduct and Plaintiff's ascertainable loss. Indeed, it is well-established that "[c]ausation under the [NJCFA] is not the equivalent of reliance." *Lee*, 203 N.J. at 522; *see also Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372 (2007) (holding that the NJCFA "essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove an ascertainable loss.") To make a showing of causation, "a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." *Id.* However, the plaintiff must plead facts establishing a causal nexus

22

with the particularity required by Rule 9(b); that is, the plaintiff must allege facts that connect defendant's alleged unlawful conduct and plaintiff's ascertainable loss.   In other words, the pleadings must demonstrate how the alleged wrongdoing had any bearing on plaintiff's decision to purchase the product or service.  *See Thiedemann*, 183 N.J. at 246.

Here, Plaintiff has failed to properly allege causation.  As to this element, Plaintiff simply alleges that he paid "sums out of pocket that [he] would not have paid but for defendant(s)' fraudulent conduct" and that he was "induced to purchase the service contract with misrepresentations."  These are generalized and conclusory allegations.  What Plaintiff fails to allege are the particulars as to how his loss can be attributable to the alleged unlawful conduct.  For example, Plaintiff does not allege that he purchased the mattress from R&F because of any misrepresentations.  While Plaintiff, in a broad-brush fashion, alleges that he would not have purchased the Protection Plan but for R&F's misrepresentation regarding the terms of the Plan, Plaintiff has not alleged the terms of the Plan and how the alleged misrepresentations are inconsistent with those terms.  Nor has Plaintiff alleged the role that the purported misrepresentations played in his purchase decisions. These facts are important because they demonstrate — with the requisite particularity — how Plaintiff was induced by R&F to purchase the Protection Plan.

In sum, because Plaintiff has failed to allege all three required elements of a NJCFA claim, Count Three of his Complaint is dismissed without prejudice.

## IV.  Breach of Contract/Warranty

Count Four of the Complaint asserts a claim for breach of warranty.  Defendant argues that Plaintiff has not sufficiently alleged the elements of such a claim.  I agree.

Express warranties in New Jersey are "governed by Article 2 of the state's Uniform Commercial Code." *Henderson v. Volvo Cars of North America, LLC*, No. 09-4146, 2010 U.S. Dist. LEXIS 73624, at * 7 (D.N.J. Jul. 21, 2010) (citing N.J.S.A. 12A:2-101, *et seq.*).  Section 12A:2-313 provides, in pertinent part:

> (1)  Express warranties by the seller are created as follows:
>
> > (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> >
> > (b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. 12A:2-313.

To adequately plead a breach of express warranty claim under New Jersey law a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its

24

own contractual obligations." *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 253 (3d Cir. 2010) (quotations and citations omitted).

Here, to satisfy the above pleading requirements, Plaintiff alleges that a salesperson informed him that the Protection Plan "covered everything from stains and tears to sags and/or deformities for a period of 10 years with 'no questions asked' by R&F." Compl., ¶ 17. Subsequently, Plaintiff purchased the Protection Plan. According to Plaintiff, when his mattress had an unspecified problem, R&F declined to provide coverage under the Plan. However, those allegations are not sufficient to allege an express warranty claim. For one, the Complaint does not allege what document or writing contained the warranty, and the purported terms of the warranty. Relatedly, as discussed earlier, Plaintiff does not identify the issues that he experienced with his mattress, and therefore, while Plaintiff alleges that R&F did not perform under the Plan, Plaintiff cannot sufficiently allege that Defendant breached the warranty without alleging whether Defendant was obligated under the Plan to act. In other words, Plaintiff has failed to allege which terms R&F allegedly breached, and how R&F's acts or failure to act breached those terms. Without those allegations, Plaintiff has not allege all of the elements required under a breach of warranty claim. Accordingly, Count Four of the Complaint is dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.   Counts One and Two are dismissed.   Plaintiff is given leave to amend his Complaint as to Counts Three and Four, within 30 days from the date of the Order accompanying this Opinion.   An appropriate Order shall issue.


DATED:  November 30, 2016


                                        /s/ Freda L. Wolfson
                                        Freda L. Wolfson
                                        U.S. District Judge